UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | x | |
| DASSY GREEN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No:   21-6385 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CLASS ACTION COMPLAINT |
| COSY HOUSE, LLC dba COSY HOUSE COLLECTION | ) ) ) | DEMAND FOR JURY TRIAL |
| Defendants. | ) ) | |
| | x | |

Plaintiff, Dassy Green ("Plaintiff"), by and through her attorneys, on behalf of herself and all others similarly situated, for her Complaint states as follows:

**NATURE OF ACTION**

1.      This action seeks to remedy the unfair, deceptive, and unlawful business practices of Defendant, Cosy House, LLC dba Cosy House Collection  ("Defendant" or "CHC"), with respect to the advertising, marketing and sales of textile products not woven from bamboo fibers . . . yet described by Defendant as "Bamboo."

2.      Defendant markets, sells, and distributes textile fiber products online, such as bedding and towels (collectively "Products"), using a marketing and advertising campaign that is centered around the claim that the Products are made of Bamboo (the "Bamboo Claim(s)").

3.      Textile can be produced from bamboo in one of two ways:

a.      either by directly weaving the actual fibers of the bamboo plant into fabric, often called "mechanically processed bamboo," or

- 1 -

b.    by deriving  other materials, such as rayon or viscose, from the bamboo
plant source, typically by means of environmentally toxic chemicals in a
process that emits hazardous pollutants into the air. The derivative rayon
or viscose fibers produced, which contain no trace of the original plant, are
then used to weave fabric.

4.    Pursuant to the Federal Trade Commission's guidelines, only textile directly
woven from actual bamboo fibers may be lawfully described as Bamboo.

5.    Pursuant to the Federal Trade Commission's guidelines, textiles woven from
materials produced from a bamboo plant source must be identified as "Rayon from Bamboo,"
"Bamboo Viscose," or a comparable description ( at times "Bamboo Derivative").

6.    Misrepresenting as Bamboo textiles that were actually woven from other
materials merely derived from a bamboo plant source is a deceptive practice.

7.    This deceptive practice, *i.e.* advertising textiles produced from Bamboo
Derivative as Bamboo, has been the subject of extensive litigation by, and warnings from, the
Federal Trade Commission to the industry . . . warnings which CHC knows well but has failed to
heed.[1]

---

[1] The truth is, most "bamboo" textile products, if not all, really are rayon, which typically is
made using environmentally toxic chemicals in a process that emits hazardous pollutants into the
air. While different plants, including bamboo, can be used as a source material to create rayon,
there's no trace of the original plant in the finished rayon product.

If you make, advertise or sell bamboo-based textiles, the Federal Trade Commission, the nation's
consumer protection agency, wants you to know that ***unless a product is made directly with
bamboo fiber — often called "mechanically processed bamboo" — it can't be called bamboo***.

*See* Exhibit 1: "How to Avoid Bamboozling Your Customers," (FTC 2009) also available at:
business.ftc.gov/documents/alt172-how-avoid-bamboozling-your-customers.  (emphasis added)

8. Defendant has made, and continues to make, deceptive and misleading Bamboo Claims to consumers, in a pervasive, nationwide, marketing scheme that confuses and misleads consumers about the true nature of its products.

9. Defendant knows that consumers value the benefits of real Bamboo, and advertises the Products with the intention that consumers rely on the online Bamboo Claims and representations.

10. Through a scheme of integrated deceptions Defendant has worked to convey the singular message: its Products are made from natural Bamboo fibers directly woven into fabric.

11. Defendant's Bamboo Claims are deceptive, misleading and have been designed solely to cause consumers to buy the Products.

12. As early as August 2009, when the FTC issued a Warning Letter to the market, Defendants or their predecessors, who commenced Products sales no later than 2015, knew that they were deceiving the public with *per se* violations of mandated disclosure modalities.

13. Plaintiff and the Class (defined below) were exposed to Defendant's misleading advertising message, which is on Defendant's website, and to which consumers must link in order to make a purchase.

14. Plaintiff and the Class read and relied upon Defendant's online representations and advertising, namely the Bamboo Claim, when they purchased the Product. They also read such misinformation in paperwork and Product packaging received from CHC. Defendant's multitudinous use of "Bamboo Claims" manipulated consumer expectations, i.e. the essence of consumer deception.

15. Plaintiff and the Class purchased the Products because they wanted the benefits of real Bamboo.

16.    By relying on Defendant's representations that the Products were in fact Bamboo, Plaintiff and the Class have been damaged and suffered an ascertainable loss, discussed *infra.*

17.    Plaintiff and the Class did not receive the benefit of the bargain, *i.e.* the benefits of Bamboo, when they purchased the Bamboo Derivative Products, advertised as being Bamboo.

19.    This class action seeks to provide redress to consumers who have been harmed by the false and misleading marketing practices Defendant has engaged in with respect to the Products.  Plaintiff asserts claims, on behalf of herself and the Class for violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), F.S. §§501.201 et seq, which statute governs all transactions at suit.[2]

18.    Through this action, Plaintiff seeks injunctive relief, actual damages, attorneys' fees, costs, and all other relief available to the Class as a result of Defendant's unlawful conduct.

## JURISDICTION AND VENUE

19.    Claims asserted herein arise under the laws of the State of Florida because Plaintiff, each class member and Defendant are bound by a choice of law clause in  Defendant's Terms of Service.

20.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendant are citizens of different states.

---

[2] Defendant's Terms of Service, Section 18, provide: "These Terms of Service and any separate agreements whereby we provide you Services shall be governed by and construed in accordance with the laws of 5355 115th Ave N. Clearwater, FL 33760."
https://www.cosyhousecollection.com/pages/terms-of-service

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because many of the acts and transactions alleged herein occurred in substantial part in this District.

## PARTIES

22.     Plaintiff is a resident of Queens, New York and, thus, is a citizen of New York.

23.     Plaintiff purchased the Bamboo Derivative Products, on CHC's proprietary website, for her personal, family or household use.

24.     Defendant Cosy House, LLC is a Florida Limited Liability Company, formed on June 23, 2021, upon conversion of predecessor Cosy House, Inc., a Florida corporation.

25.     On information and belief, having reviewed the records of the Florida Secretary of State and Experian database on Lexis/Nexis, Defendant's Sole Member is Wholesome Goods, Inc., a Nevada corporation with principal offices in Florida.

26.     All of Defendant's actions described in the Complaint are part of, and in furtherance of, the unlawful conduct alleged herein, and were authorized and/or done by Defendant's various officers, agents, employees, or other representatives while actively engaged in the management of Defendant's affairs within the course and scope of their duties and employment, and/or with the actual, apparent, and/or ostensible authority of the Defendant.

## COSY HOUSE'S  BUSINESS PRACTICES

27.     Defendant markets and sells the Products  throughout New York and nationwide, all with the choice-of-law clause requiring the application of Florida law, cited n.2 *supra*.

28.     Defendant publishes various advertising claims concerning the fiber content of such Products, stating that fiber content to be Bamboo.

29.     "Bamboo" or "Bamboo fiber," connotes to the reasonable consumer a number of qualities, including thin and space-saving, natural and eco-friendly, antibacterial, highly absorbent, mildew resistant, nontoxic, plush and suitable for sensitive skin.

30.     Contrary to representations made by CHC, Products marketed and sold by Defendant as Bamboo, including those purchased by Plaintiff, are Bamboo Derivative fibers such as rayon, at times called viscose (both referred to as "rayon" hereinafter), not actual Bamboo fibers directly woven into fabric.

31.     CHC  Products contain microfiber as well, which is nowhere disclosed in its advertising.  Microfiber is a polyester and a well-known environmental hazard.

32.     CHC knows its Bamboo Claims to be false and misleading.

### CHC'S WEBSITE: TOOL OF DECEPTION

33.      CHC uses its website to further its scheme of deception upon unsuspecting consumers.

34.     On its website, CHC advertises numerous textile products as being made entirely from Bamboo when, in fact, said products are made not from Bamboo but rather are made from Bamboo Derivatives such as rayon . . . and even polyester, a wholly synthetic plastic or nylon fiber.

35.     With respect to the Products that are the subject of this lawsuit, CHC misrepresents that they are made from Bamboo rather than from Bamboo Derivatives such as rayon.  CHC says nothing of microfiber, anywhere; and customers can learn of a "microfiber" component only on the material tag which claims "Premium Bamboo Fiber."  See Image No. 1, *infra.*

36.    With respect to the Products that are the subject of this lawsuit, CHC makes the Bamboo Claim without adequately disclosing the true composition of the Products.  By advertising the Products as Bamboo without providing meaningful disclosure that the products are, in fact, a Bamboo Derivative, CHC deceptively creates the false impression in the consumer's mind that the Products are Bamboo and possess the superior qualities inherent in Bamboo, but which Bamboo Derivatives such as rayon do not possess.

37.    CHC, being online, seeks the customer's buying decision in the first screen or two of an online presentation of, in Plaintiff's case, some 24 screens.  Screen after screen, some presenting wholly irrelevant matter which a consumer will likely ignore (and read no further), contains the unqualified "Bamboo claim."  In Plaintiff's case, as presented on Exhibit 2 hereto, there were 24 screens to the CHC presentation, using the word "Bamboo," prominently displayed, some 30 times on the first 23 screens.  On the very last Screen #24, CHC uses the term  "Bamboo Rayon" one time, inconspicuously.  See Exhibit 2 hereto at Screen #24.

38.    CHC's single disclosure of "Bamboo Rayon" on Screen #24 runs afoul of the FTC formal guidance in "Disclosures: How to Make Effective Disclosures in Digital Advertising," reprinted at ("Ad Guide").  https://www.ftc.gov/system/files/documents/plain-language/bus41-dot-com-disclosures-information-about-online-advertising.pdf

39.    CHC links a disclosure of rayon/microfiber to Screen #3, under a "Details" button, following the location on Screen #2 where the consumer decides to actuate the "Add to Cart" function, thereby effecting the purchase.  To the extent CHC will suggest that such a buried disclosure satisfies the FTC's "clear and conspicuous" requirement, Plaintiff will respond that CHC's ad is in multiple violation of the Ad Guide's rules as Placement, Prominence,

Distracting Factors and failure to draw attention to inconsistent fiber content disclosure.  Ad Guide, cited *supra*, at pp. 6-19.

40.    CHC's bad faith and malicious intent is evident from its disclosure of rayon only under the Details link and the fact that, in its advertising on Amazon it discloses its sheets' rayon content along with the Bamboo Claim, on the same or adjacent screen.  The fact that CHC does not similarly disclose rayon content on its own website evinces CHC's calculated deception of the public.

41.    At all relevant times CHC had actual knowledge that its business practices as alleged herein violated FUDTPA.

42.    Plaintiff and each Class member has purchased Bamboo Derivative Products online from Defendant and was exposed to and read Defendant's misleading advertising message.

43.    Plaintiff and each Class member relied upon Defendant's misleading advertising when purchasing Bamboo Derivative Products from Defendant.

44.    Other online retailers do not falsely advertise the composition of Bamboo Derivative products.  In fact, the exact product in the exact color which Plaintiff purchased from CHC can be found, identified as "Material: Rayon" at Amazon websites.[3]

45.    Suppliers are careful to fully disclose fiber content in even their Google search listings, let alone on their product pages:

---

[3] *See* https://www.amazon.com/Cosy-House-Collection-Luxury-Bamboo/dp/B01L2XGRUA/ref=sr_1_8?dchild=1&keywords=cosy+house&qid=1635981205&qsid=134-6604135-5120462&sr=8-8&sres=B07DP3RYQH%2CB01L2XGRUA%2CB078XN6B53%2CB08BPHP7V3%2CB07HCM1343%2CB07KLJW894%2CB08428VJM6%2CB00ZETJNCI%2CB07M8DBHFP%2CB01DI139YG%2CB079QJT53G%2CB07KGHBSPR%2CB074CR6L8W%2CB07RWCM58W%2CB08XC55RGF%2CB06Y1G2HMV%2CB08XC4M74T%2CB07BLNGN6W%2CB018ZQR2A6%2CB076RD4V9X&srpt=BED_LINEN_SET

Malouf Fine Linens Woven: Bamboo Sheet Set Eastern King
https://www.sleepworld.com › Bedding › Linen

Includes: (1) Fitted Sheet (1) Flat Sheet (2) Pillowcases Bamboo Sheets will make
slipping into bed a definite treat. The porous composition of the rayon ...
Material: Rayon from Bamboo
Dimensions: Length:76" - Width:80" - Height:22"
$139.99 · In stock

46.     The manner in which CHC marketed and advertised the Products is a complex of
deceptive sales practices in violation of FUDTPA because (i) CHC misrepresents Product fiber
content as 100% Bamboo, (ii) CHC claims the benefits of Bamboo when not a single bamboo
fiber is found in its Products, and (iii) CHC employs a "You Save" representation, advising
shoppers of savings of between $110 to $115, i.e. the difference between price paid and market
value of real bamboo sheets.  See Image No. 3 *infra*.

### PRIOR FEDERAL TRADE COMMISSION PROCEEDINGS CONCERNING TEXTILE FIBER PRODUCT MISREPRESENTATIONS

47.     Rayon is the generic name for a type of regenerated or manufactured fiber made
from cellulose.  Rayon is manufactured by taking purified cellulose from a plant source
(including Bamboo), also called a cellulose precursor, and converting it into a viscous solution
by dissolving it in one or more chemicals, such as sodium hydroxide.  The chemical solution is
then forced through spinnerets and into an acidic bath where it solidifies into fibers.

48.     Many plant sources may be used as cellulose precursors for rayon fabric,
including cotton linters (short cotton fibers), wood pulp, and Bamboo.  Regardless of the source
of the cellulose used, the manufacturing process involves the use of hazardous chemicals, and the
resulting fiber is rayon and not cotton, wood, or Bamboo fiber.  *See* 40 C.F.R. Part 63 ("National
Emissions Standards for Hazardous Air Pollutants: Cellulose Products Manufacturing").

49.    The Federal Trade Commission has published definitive trade rules, including the following:

> "[w]ords, coined words, symbols or depictions, (a) which constitute or imply the name or designation of a fiber which is not present in the product . . . *[ma*y] *not be used in such a manner as to represent or imply that such fiber is present in the product.*" 16 C.F.R. § 303.18.  Any term used in advertising, including internet advertising, that constitutes or connotes the name or presence of a textile fiber is deemed to be an implication of fiber content, 16 C.F.R. § 303.40; (emphasis added)

50.    In August 2009, the Federal Trade Commission announced three settlements and one administrative action against marketers improperly labeling and advertising rayon textile products as "Bamboo."  In addition to publicly announcing these cases, the Commission issued a Business Alert to remind marketers of the need to label and advertise textile products properly and to clarify that "Bamboo" is not a proper generic fiber name for manufactured rayon textile fibers.  The press release announcing the four cases and the Business Alert were disseminated widely throughout the marketplace.  *See* Exhibit 2: "How to Avoid Bamboozling Your Customers," (FTC 2009).

51.    The Commission made clear in connection with its statutory enforcement of the FTC Act as to "Bamboo" that:

a.    both manufacturers and sellers of textile fiber products must comply with the Textile Act and the Textile Rules, *see H. Myerson Sons, et al.,* 78 F.T.C. 464 (1971); *Taylor- Friedsam Co., et al.,* 69 F.T.C. 483 (1966); *Transair, Inc., et al.,* 60 F.T.C. 694 (1962); and

b.    it is an unfair or deceptive act or practice to falsely or deceptively stamp, tag, label, invoice, advertise, or otherwise identify any textile fiber product regarding the name or amount of constituent fibers contained therein, *see*

*Verrazzano Trading Corp., et al.*, 91 F.T.C. 888 (1978); *H. Myerson Sons, et al.,* 78 F.T.C. 464 (1971); *Taylor-Friedsam Co., et al.,* 69 F.T.C. 483 (1966); *Transair, Inc., et al.,* 60 F.T.C. 694 (1962). (emphasis added)

52.    The FTC made clear that the trade practice of advertising "rayon from Bamboo" as "Bamboo" is a deceptive act or practice in violation of Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).  Exhibit 2.

53.    FUDTPA specifically adopts and binds itself to all FTC rules, standards and interpretation (Fl. Stat. §§501.203(3)(a)-(b), 501.204-.205.[4]

54.    Notwithstanding the foregoing notice and warning to the marketplace, Defendant continued and continues to advertise rayon/viscose textile fiber products as "Bamboo."

55.    Defendant's use of the word "Bamboo" described above is a deceptive practice, as determined by the courts and the FTC, under Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1).  See n.1 *supra*.

### PLAINTIFF'S FACTS

56.    On or about October 12, 2021 Plaintiff accessed Defendant's online site whilst shopping for sheets.  She purchased a set of Defendant's queen-sized "Luxury Bamboo Bed Sheets" at a cost of $59.95.  She read that the sheet set had a value of $169.95 and she was

---

[4] Any violation of (i) rules promulgated pursuant to the FTC act, or (ii) the standards of unfairness or deception set forth and interpreted by the FTC or the federal courts, automatically violates FUDTPA as a matter of law.  Fla. Stat. §501.203(3).  See Senate Staff Analysis and Economic Impact Statement, ch. 93-38 (bill no. CS/SB 1066), at 2 ("The new purpose is to make consumer protection and enforcement consistent with federal policy"); *Kirby Center v. Dept. of Labor and Employment Security*, 650 So. 2d 1060, 1062 (Fla. 1st D.C.A. 1995) (staff analyses indicate legislative intent; Florida statute takes on same construction as federal counterpart on which it is modeled to extent consistent with spirit and policy of Florida law).

saving $110 by purchasing from CHC rather than "full retail" from a different seller or bamboo sheets.

57.    Prior to purchasing the Product at issue, Plaintiff read and relied upon Defendant's online  presentation stating that the sheets were made of 100% bamboo.

58.    After receiving her order Plaintiff examined the Product and found a material tag, and reviewed the website, and determined that the sheets were not of natural composition, but synthetic:



Image No. 1

59.    The material tag, in addition to falsely reciting "Premium Bamboo Fiber," discloses that the Product contains an undisclosed percentage of "microfiber."  Microfiber (or

microfibre) is synthetic fiber finer than one denier or decitex/thread, having a diameter of less than ten micrometers. ... The most common types of microfiber are made variously of polyesters; polyamides (e.g., nylon, Kevlar, Nomex, trogamide); and combinations of polyester, polyamide, and polypropylene.

60.     The material tag discloses that Product was manufactured in China.

61.     For the reasons alleged above in "CHC'S WEBSITE: TOOL OF DECEPTION, CHC (i) marketed to Plaintiff and the Class in bad faith, (ii) used an obviously fraudulent material tag, (iii) and, at that, embellished on and misrepresented the material tag by mentioning bamboo but not microfiber in its advertising, and (iv) marketed its sheets as its own, i.e. under private label and with no disclosure that it was receiving Products from a Chinese or other-nationality manufacturer.

62.     CHC represented itself as the manufacturer, notwithstanding any post-sale material tag "Made in China" disclosure.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action on behalf of herself and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

64.     The Class ("Class")  that Plaintiff seeks to represent, subject to amendment following appropriate discovery, is defined as follows:

> All persons who, in the United States, on or after four years preceding the commencement hereof, purchased online, from any website maintained by Defendant, including but not limited to https://www.cosyhousecollection.com, any textile product advertised on any such website as "Bamboo" ("Class").

65.     Excluded from the Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have

suffered personal injury as a result of using the Product; and (c) the Judge to whom this case is assigned.

66.    <u>Numerosity/Impracticability of Joinder</u>:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control.

67.    <u>Commonality and Predominance</u>:  There are common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to the following:

a.    whether CHC engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of the Products;

b.    whether CHC's acts and omissions violated FDUTPA;

c.    whether CHC made material misrepresentations of fact or omitted material facts to Plaintiff and the Class regarding the marketing, promotion, advertising and sale of the Products, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiff and the Class;

d.    whether CHC's false and misleading statements of fact and concealment of material facts regarding the Products were intended to deceive the public;

e.    whether the market value of the goods delivered to Plaintiff and Class members was less than the goods promised to be delivered;

f.    whether CHC's acts and omissions deceived Plaintiff and the Class;

- 14 -

g.    whether CHC was required to, but failed to, disclose a country or origin in its advertisements and marketing materials;[5]

h.    whether CHC misrepresented Product as antibacterial;

i.    whether the material tag is legal insufficient by failing to provide truthful information as to Product content and percentage of each component therein mentioned;

j.    whether, as a result of CHC's misconduct, Plaintiff and the Class are entitled to equitable relief and other relief and, if so, the nature of such relief; and

k.    whether Plaintiff and the members of the Class have sustained ascertainable losses and damages as a result of CHC's acts and omissions, and the proper measure thereof.

68.    Typicality:  Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent.  Plaintiff and all Class members have been injured by the same wrongful practices in which Defendant has engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

69.    Adequacy:  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained Class counsel who are experienced and

---

[5] Although the Product was manufactured in China, Defendant neither discloses Product's country or origin nor that the Product was imported.  Failure to disclose foreign manufacture in advertising is a deceptive practice.  By reason of the foregoing, Defendant's conduct is unlawful under FUDTPA, as measured by 15 U.S.C. § 70b(i) and § 68b(e); 16 C.F.R. § 303.34 and § 300.25a.

qualified in prosecuting class actions.  Neither Plaintiff nor his attorneys have any interests which are contrary to or conflicting with the Class.

70.     <u>Injunction</u>:  Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

71.     <u>Management/Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court systems in New York and throughout the United States  would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Plaintiff will not have any difficulty in managing this litigation as a class action.

## DAMAGES UNDER FDUTPA

72.     "'Actual damages'" under FDUTPA 'is a term of art, defined by Florida courts as

the difference in market value of the product or service in the condition in which it was delivered

and its market value in the condition in which it should have been delivered." *Eclipse Med., Inc.*

*v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999)." *Nat'l*

*Equestrian League, LLC v. White*, No. 20-21746-CIV-MORE, 2021 U.S. Dist. LEXIS 100552, at

\*38 (S.D. Fla. May 26, 2021).

73.     CHC advertising on its proprietary website establishes the market value of the

product promised, i.e. what should have been delivered, as to each set of sheets sold:

## Luxury Bamboo Bed Sheets

Fitted Sheet + Flat Sheet + 2 Standard Pillowcases

$169.95 **$59.95**

You Save $110.00 (65% Off)    ● IN STOCK

Image No. 2

74.     In fact, CHC features a drop-down menu showing, as to each size sheet set, the

market value of real bamboo sheets:

| | | |
|---|---|---|
| Twin | ~~$169.95~~ | **$57.95** |
| Twin XL | ~~$169.95~~ | **$57.95** |
| Full | ~~$169.95~~ | **$58.95** |
| Queen | ~~$169.95~~ | **$59.95** |
| King | ~~$169.95~~ | **$59.95** |
| Cal King | ~~$169.95~~ | **$59.95** |
| Split King | ~~$174.95~~ | **$59.95** |

Image No. 3

75.    As shown in Image No. 2, each sale is accompanied by (i) a representation as to the market value of the bamboo sheets purportedly being sold, (ii) the real time market value of the sheets delivered by CHC, and  (iii) a calculation of the difference between the two.

76.    Plaintiff and each Class member are entitled to recover as actual damages the amount stated by CHC as "You Save," because the "You Save" amount (i) admits the value of the bamboo sheets purportedly subject of the transaction, and (ii) is a false representation in and of itself for which CHC must be held accountable.  The exact calculation of damages will be:

**Defendant's Purported Market Value – Price Paid = Actual Damages**

**<u>FIRST COUNT</u>**
**Violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), F.S. §§501.201to Obtain Damages on Behalf of the Class**

77.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

78.    CHC's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under the FDUTPA, which was enacted to protect the consuming

public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

79.    The practices of CHC, described throughout this Complaint, were specifically directed to consumers and violate the FDUTPA for, *inter alia*, one or more of the following reasons:

a.    CHC engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, i.e. that its "Bamboo" was really rayon, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by them;

b.    CHC knowingly used a false material label stating "Pure Bamboo Fiber;"

c.    CHC failed to disclose county of origin or even that Product was imported;

d.    CHC failed to reveal facts, including fiber content, i.e the presence of microfiber which in no event has any relationship to bamboo, that were material to the transactions in light of representations of fact made in a positive manner;

e.    CHC failed to reveal material facts to Plaintiff and Class with the intent that Plaintiff and the Class members rely upon the omission;

f.    CHC made material representations and statements of fact to Plaintiff and the Class, including as to fiber content, that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

g.    CHC intended that Plaintiff and the other members of the Class rely on its misrepresentations and omissions, so that Plaintiff and other Class members would purchase the Product;

h.    At or prior to the time CHC made Bamboo Claims, Florida law (Fla. Stat. §501.203(3)), which incorporates FTC standards and rules, required Defendant to independently confirm the accuracy of such claims prior to stating them . . .  but Defendant made its "Bamboo Claims" without a reasonable basis therefore; and

i.    Under all of the circumstances, CHC's conduct in employing these unfair and deceptive trade practices was highly calculated, malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

80.    CHC's actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to CHC's generalized course of deception.

81.    By committing the acts alleged in this Complaint, CHC has misled Plaintiff and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products were Bamboo.

82.    The foregoing acts, omissions and practices set forth in connection with Defendant's violations of FDUTPA proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of, *inter alia*, insufficiency of consideration, and are entitled to recover such damages, together with equitable and declaratory relief, punitive damages, attorneys' fees and costs of suit.

## SECOND COUNT
### Violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), F.S. §§501.201, on behalf of the Class to Obtain Injunctive Relief

83.    Plaintiff re-alleges all preceding allegations as though set forth at length.

84.    CHC's Bamboo Claims misled Plaintiff and members of the Class, and is likely in the future to mislead reasonable consumers acting reasonably under the circumstances.

85.    Plaintiff and the Class are entitled under Florida law to obtain a statutory injunction and thus restrain continuing or future violations of FUDTPA as alleged hereinabove:

**501.211   Other individual remedies.**—

(1)   Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment against Defendant granting the following relief:

A.    An order certifying this case as a class action and appointing Plaintiff as Class representative and Plaintiff's counsel to represent the Class;

B.    Actual damages for injuries suffered by Plaintiff and the Class;

C.    Punitive damages;

D.    Statutory pre-judgment and post-judgment interest on any amounts;

E.    An order (1) requiring CHC to immediately cease its wrongful conduct as set forth above; (2) enjoining CHC from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and

practices complained of herein; and (3) ordering CHC to engage in a corrective advertising campaign;

F.      Payment of reasonable attorneys' fees and costs; and

G.      Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all triable issues.

/s/Mark Schlachet
43 West 43rd Street -Ste. 220
New York, New York 10036-7424
Tel: (216) 225-7559
Email: markschlachet@me.com

9511 Collins Ave.-Ste. 605
Surfside, FL 33154

*Attorney for Plaintiff Dassy Green*